IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Carol S. Ginther,                    :

    Plaintiff,              :

  v.                               :    Case No. 2:09-cv-00189

Michael J. Astrue,                   :    JUDGE HOLSCHUH
Commissioner of Social Security,
                                     :
    Defendant.

REPORT AND RECOMMENDATION

I. Introduction

Plaintiff, Carol S. Ginther, filed this action seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. That application, which was protectively filed on October 8, 2003, alleged that plaintiff became disabled on July 20, 2003.

After initial administrative denials of her claim, plaintiff was afforded a hearing before an Administrative Law Judge on May 16, 2007. In a decision dated July 27, 2007, the Administrative Law Judge denied benefits. That decision became the final decision of the Commissioner when the Appeals Council denied review on January 16, 2009.

Plaintiff thereafter timely commenced this civil action. The record of administrative proceedings was filed in this Court on May 15, 2009. Plaintiff filed a statement of errors on August 11, 2009 to which the Commissioner responded on August 27, 2009. No reply brief has been filed, and the matter is now ripe for decision.

II. Plaintiff's testimony

Plaintiff's testimony at the administrative hearing revealed

the following. Plaintiff, who was 67 years old at the time of the administrative hearing, has a high school education and received some additional training in floral design. (Tr. 238). Her last job was at Frontier Community Services, where she worked as a habilitation specialist. (Tr. 241-42). She resided with mentally handicapped individuals and helped them with homemaking, cooking, and physical needs. (Tr. 242). She had also been employed as a client greeter and office clerk at Workforce Services Unlimited, and as a sales person and assistant manager at a Rhodes Furniture store. (Tr. 244-45).

Plaintiff testified that she experiences problems from prolonged walking, standing and sitting. (Tr. 247-48). She attributes these problems to her fibromyalgia. (Tr. 248). Her symptoms had been under good control until 2002 when she suffered a back injury. (Tr. 248-49). She is in constant pain, and daily activities such as dressing and showering aggravate that pain. (Tr. 249-50). She does walk three or more days a week for at least a half hour at a time. (Tr. 251). However, she can only stand in place for ten minutes at a time and can sit for an hour. (Tr. 251-52). She can lift and carry five to ten pounds. (Tr. 252). She is depressed by her physical condition and takes medication for depression. Id. She also suffers from numbness and tingling in her hands. (Tr. 269).

Plaintiff is able to cook meals for herself and do dishes. She does her own laundry but needs help running the vacuum. She dusts occasionally and does grocery shopping, and also does some gardening. (Tr. 258-59). She manages her own finances and her aunt's as well. (Tr. 260). She also reads and watches television. (Tr. 262-63). She goes out to eat two or three times a week and socializes with family members. (Tr. 264-65). Finally, she testified that she might be able to do her former job at Rhodes Furniture despite her impairments. (Tr. 274).

### III. The Medical Records

Pertinent medical records reveal the following. Because plaintiff's single assignment of error focuses on the opinion given by her treating physician, Dr. Beam, in contrast to the opinions of the state agency reviewing physicians, the Court will summarize those particular records in some detail.

The medical records show that plaintiff was injured in a work incident which occurred in September, 2002. The treatment notes from that time diagnose cervical and lumbosacral sprain but indicate that those conditions caused an acute exacerbation of her fibromyalgia. (Tr. 124-25). By February of 2003, those problems seem to have resolved, but she was experiencing pain due to carpal tunnel syndrome. (Tr. 126). She underwent surgery for right carpal tunnel release in April, 2003. (Tr. 127).

The first state agency review appears to have taken place on December 17, 2003, and without any records available from Dr. Beam. That evaluation, done by Dr. Norris, indicated that plaintiff could perform work at the medium exertional level with some limitations due to her carpal tunnel syndrome. (Tr. 139-44). Dr. Norris' evaluation was confirmed by Dr. Kelley on September 24, 2004, again without reference to any treating source functional statement. (Tr. 145).

Dr. Tanley saw plaintiff on January 12, 2004, for purposes of a mental status evaluation. He diagnosed an adjustment disorder with depressed mood and a pain disorder associated with both psychological factors and a general medical condition. He thought the conditions were moderately severe and rated plaintiff's GAF at 60, restricting her mainly in the areas of relating to others and withstanding the stress and pressure of daily work. (Tr. 146-48). Dr. Meyer reviewed her records and believed she had a moderate limitations in only three areas -

maintaining concentration and attention for extended periods, completing a normal workday and week without interruptions from psychologically-based symptoms and performing at a consistent pace, and responding appropriately to changes in the work setting. (Tr. 163-71).

Dr. Beam's office notes from 2002 through 2004 are found in the record at Tr. 172-187. He saw her about twelve times in that time frame. In September, 2002, she told him that she would probably get total disability due to her neck injury. He diagnosed an exacerbation of her fibromyalgia on October 10, 2002, and she demonstrated multiple trigger points on that examination. By December, 2002, her condition had improved with physical therapy. She also stated she was quite pleased with the pain relief she was getting from her medications. In April, 2003, she told Dr. Beam that another physician had discontinued her pain medications and told her she was overplaying her symptoms. Dr. Beam re-prescribed Ultram but expressed some concern about habituation. The only objective symptom noted at that time was some difficulty reaching overhead with her right arm. By July, 2003 she was moving all of her extremities well. She did express concern with having to increase her physical activities at work and not believing she could do that. She also discussed plans for applying for disability. In September, she clarified that the activities causing problems for her were repetitive gripping and lifting of clients. In April of 2004, she was experiencing significant pain to palpation of her muscles and also noted that she had little motivation to get up and around at her home. Finally, in May, 2004, Dr. Beam noted that her physical appearance had improved, and she reported great improvement in her depression symptoms.

Dr. Fritzhand performed a consultative physical examination on August 17, 2004. Plaintiff reported general pain and

stiffness due to fibromyalgia. She had a very depressive affect at that time and had multiple somatic complaints. The physical examination was essentially normal except that plaintiff was described as remaining rigid throughout range of motion and manual muscle testing. Dr. Fritzhand's impression was exogenous obesity and a history of several other conditions including fibromyalgia. He thought she could perform a mild amount of various work activities. (Tr. 188-91).

    The remaining medical records consist of treatment notes from Dr. Beam from 2004 to 2007 and his residual functional capacity assessment. The notes show that plaintiff was seen approximately ten times between August, 2004 and February, 2007. (Tr. 196-208). In February, 2004, plaintiff had done some work moving herself into a cottage near one of her children. She showed limited range of motion and discomfort on examination. She was encouraged to allow her family to do any heavy work for her. In December, 2004, her proximal muscle pain was described as mild. The March, 2005 examination was unremarkable. There were no visits to Dr. Beam between June, 2005 and June, 2006. At the June, 2006 visit, the only specific complaint she made was of some lower back pain. She reported some left-sided inferior rib pain in July, 2006, and in October of that year described some back and knee pain, but declined to consider additional medications. The final office notes indicates a diagnosis of Type 2 diabetes. Additionally, plaintiff demonstrated "significant proximal muscular discomfort with her fibromyalgia. She said her energy level is very poor." Dr. Beam also noted that he had been asked to provide information concerning her disability claim, and that while he was "not a disability-determining physician, ... we can certainly answer the questions objectively and submit that for her attorney's review." (Tr. 196).

The form completed by Dr. Beam is a "Medical Findings Questionnaire." On that form, he indicated that plaintiff could not walk a city block, could only sit for 45 minutes at a time and stand for five minutes at a time, could not sit or stand and walk for more than two hours each in a work day, could not use her hands or arms to any degree, could only lift five pounds rarely, and could not stand the stress of a job. (Tr. 225-27).

### IV. The Expert Testimony

A vocational expert, Mr. Hartung, testified at the administrative hearing. He characterized plaintiff's past work as a mental retardation aide as skilled and medium. She also functioned as a houseparent, which is semiskilled and medium. The jobs at Rhodes Furniture were semi-skilled and light. Her office clerk job is ordinarily classified as semi-skilled and light, but she performed it at the sedentary level. (Tr. 275). If plaintiff were limited to medium work with some limits on the use of her hands and also could perform routine work at a reasonable pace with few changes, she could still do the office clerk job. If, however, she were as limited as Dr. Beam believed, or as she testified, she could not work. (Tr. 276-77). The same would be true if she could not withstand the stress of work for one-third of the work day. (Tr. 278).

### V. The Administrative Decision

Based on the above evidence, the Commissioner found that plaintiff was insured for disability insurance purposes only through July 31, 2005. Further, the Commissioner found that plaintiff suffered from severe impairments including fibromyalgia, bilateral carpal tunnel syndrome, status post right carpal tunnel release, type 2 diabetes mellitus, hypothyroidism, duodenitis and small hiatal hernia, lumbar degenerative changes, obesity, an affective disorder, and a pain disorder. With these impairments, she retained the capacity to do a limited range of

medium work and was also limited to low stress work, defined in this case as routine work performed at a reasonable pace in a work setting with regular expectations and few changes. Because these limitations were not, according to Mr. Hartung, the vocational expert, inconsistent with the requirements of her past job as a general office clerk, she was found not to be disabled.

VI. Legal Analysis

In her statement of errors, plaintiff raises a single issue. She asserts that the Commissioner erred in rejecting the opinion of Dr. Beam, her long-term treating physician. This contention is evaluated under the following standard.

Standard of Review. Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" Id. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Secretary's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Secretary's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Secretary's

decision must be affirmed so long as his determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

Plaintiff notes that Dr. Beam expressed the opinion that, from a physical standpoint, she could not sit, stand and walk for a total of eight hours in a workday. The Commissioner rejected this evaluation of plaintiff's abilities in favor of the opinion of a state agency reviewing physician at least in part because, according to the administrative decision, Dr. Beam's opinion was based on plaintiff's subjective report of her limitations rather than on objective findings or his own observations. Plaintiff asserts that this statement ignores the fact that Dr. Beam himself reported his opinion to be objectively based. She also asserts that, rather than his opinion being contradicted by the medical record as a whole (another basis given for rejecting his opinion), the only conflicting evidence was the reports of two state agency reviewing physicians, and those cannot be given controlling weight when compared to the opinion of a long-time treating source. These arguments require that the Commissioner's rationale for rejecting Dr. Beam's opinion be examined in some detail.

The administrative decision clearly relies on the assessment by Dr. Norris as to plaintiff's physical capabilities. To the extent that he did not have the benefit of any of Dr. Beam's office notes or his residual functional capacity assessment, the decision states that "[t]he evidence received into the record after reconsideration ... did not provide any credible or objectively supported new and material information that would alter the State Agency's findings concerning the claimant's limitations." (Tr. 18). The decision then provided, at Tr. 19, this rationale for determining that Dr. Beam's opinion was neither credible nor objectively supported:

-8-

> [W]hile Dr. Beam has been the claimant's treating
> physician for quite some time, his progress notes
> indicate that the questionnaire was completed along
> with the claimant (Exhibit 14F, p.. 1). Thus, the
> questionnaire responses are not based on the doctor's
> observations and medical opinion, but rather based upon
> the claimant's subjective responses. The responses in
> the questionnaire are also inconsistent with and
> unsupported by the medical record as a whole.
> According, Dr. Beam's opinions are rejected and given
> virtually no weight, notwithstanding the source.

The decision does not refer specifically to what other portions of the medical record are inconsistent with Dr. Beam's opinion. It does note that Dr. Fritzhand also limited plaintiff to a mild amount of work-related activities, but this report was also rejected because it, too, was seen as inconsistent with "the medical record as a whole" and because it was not supported by Dr. Fritzhand's own objective findings.

In the Commissioner's memorandum, the Commissioner argues that the lack of objective findings supporting Dr. Beam's opinion is a valid basis for discounting it. The Commissioner also cites to the administrative decision's analysis of some of Dr. Beam's treatment notes, but that discussion (Tr. 21-22) is focused on the credibility of plaintiff's subjective complaints and not on the support, or lack of support, for Dr. Beam's opinion. Thus, the Court must evaluate the administrative decision's rejection of Dr. Beam's opinion based on the specific rationale set forth above. To do otherwise would, in the Court's opinion, be inconsistent with the Court of Appeals' decisions in Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004) and Rogers v. Comm'r of Social Security, 486 F.3d 234, 242 (6th Cir. 2007), both of which require the Commissioner clearly to articulate the reasons for discounting the opinion of a treating physician so that the claimant can know why that occurred and the

Court can know the basis of the decision under review.

The Court finds the administrative decision inadequate for several reasons. First, Rogers recognizes that fibromyalgia cases present special problems because "fibromyalgia is not susceptible of objective verification through traditional means." Rogers, 486 F.3d at 244. It noted that the treating source's opinion in that case was supported by plaintiff's complaints "of tenderness in the appropriate focal points" and could not be rejected on the basis that objective support for the diagnosis was lacking. See also Germany-Johnson v. Commissioner of Social Security, 313 Fed. Appx. 771, *7 (6th Cir. November 5, 2008) (holding that a finding of fibromyalgia cannot be rejected on the basis of normal findings as to muscle strength, range of motion and gait, and that a statement that the claimant's complaints "'are not supported by the overall objective medical evidence in the case'" was insufficient under Wilson). Here, too, Dr. Beam frequently documented tenderness in trigger points and proximal muscle tenderness, which are the customary methods for diagnosing fibromyalgia, and the rejection of his opinion strongly resembles the conclusory reference to the "medical evidence as a whole" that was rejected in Germany-Johnson. Without some additional definition of what medical evidence conflicted with Dr. Beam's opinion, the Court simply cannot determine whether it was the type of evidence which, as Germany-Johnson explains, is, in fact, not inconsistent with a diagnosis of fibromyalgia, or whether there was some specific evidence about that condition which the Commissioner viewed as undercutting Dr. Beam's opinion. This is an especially important issue in this case because the administrative decision also finds that the record is devoid of evidence of "any impairment ... that could reasonable be expected to result in pain or other symptoms of such a severity or frequency as to preclude" plaintiff from doing a full range of

-10-

medium work.  (Tr. 19).  That statement, coupled with the
decision's heavy reliance on the lack of "sufficient objective
medical evidence," id., strongly suggests that the Commissioner
did not take into account that both the existence of fibromyalgia
and its severity are not readily susceptible to objective
determination.

Second, the administrative decision's reasoning process
concerning the way in which Dr. Beam completed the medical
questionnaire is unsupported by the record.  The Commissioner
discounted his answers to the questions as being based solely
upon plaintiff's subjective complaints because "the questionnaire
was completed along with the claimant ...."  As plaintiff's
statement of errors points out, however, Dr. Beam stated that he
could answer the questions objectively, and there is no basis for
inferring that just because plaintiff may have been present for
the completion of the questionnaire, all of the input from Dr.
Beam was subjective rather than objective.

Third, it is troubling that the state agency reviews relied
upon were done without a taking into account a single record
concerning plaintiff's allegedly most disabling condition.
Records from Dr. Beam do exist which predate July 31, 2005, and
which document his diagnosis and treatment of fibromyalgia.
Neither of the reviewing physicians had the benefit of those
records, and it is not surprising that they appear not to have
attributed any limitations to fibromyalgia.  Again, they rely on
essentially normal findings in the other medical records except
for those supporting the diagnosis of carpal tunnel syndrome, and
particularly the findings in the July, 2003 report which
evaluated only her claim of neck and back sprain.  The Court does
not agree that, as the Commissioner found, his records and
findings were so undeserving of weight and credibility that they
could have had no effect on the state agency reviewers' opinions.

It is important to note that this is not a case where a finding of disability is mandated. The job which Dr. Klein thought plaintiff could perform did not require that she be able to work at the medium exertional level, and Dr. Beam's opinion as to plaintiff's residual functional capacity post-dated the expiration of her insured status by almost two years. Further, it appears to conflict to some extent with plaintiff's own testimony about her abilities. Thus, it will be up to the Commissioner to determine on remand, following the proper methods for evaluating plaintiff's condition and articulating a more specific basis for any adverse decision, whether she is entitled to benefits. On this record, however, the Court determines that the decision made lacks substantial support in the record or is otherwise inconsistent with controlling precedent. For those reasons, a remand is required.

## VII. Conclusion

For the forgoing reasons, it is recommended that the plaintiff's statement of errors be sustained to the extent that this case be remanded to the Commissioner pursuant to 42 U.S.C. §405(g), sentence four, and that a judgment be entered to that effect.

## VIII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings

or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge